Good morning, Your Honors. Lila Morgan, Federal Defenders, on behalf of Mr. Medina-Ibarra. I would like to reserve two minutes for rebuttal. The issue raised by Mr. Medina-Ibarra has only been examined by three other courts, one district court in New York in the criminal context and twice by this court in the immigration context. And each court has agreed with Mr. Medina's position. Why don't you start off by telling us what the issue is rather than what other people are saying? It's very simple, that if physical removal, absent lawful authority, cannot be considered a deportation, either in the purposes of, and in this case, as an element of a 1326 offense. Mr. Medina's order of deportation was state. The government concedes that. He kept his right to appeal during his immigration hearing, which prevents the Immigration Service from having authority to remove him for 30 full days to allow him the pendency to file that appeal. The government, or the Immigration Service, removed him anyway on that same day, prior to the vesting of any lawful authority to do so. Looking at this court's jurisprudence in cases such as Singh v. Waters and Mendez, this court has found that an improper ultraviarious removal such as this, without lawful authority, will not divest the court of jurisdiction to hear the immigration appeal. Similarly, the Southern District of New York found that it can't be considered a deportation to meet the elements of a 1326 offense. Mr. Medina's position is simple, that the deportation and removal element requires both lawful authority and physical removal at the same time in order to meet the statutory definition of that term. Whereas here, there was no lawful authority. It creates a situation where immigration can remove somebody from the country, and so long as it is done by an official, his reentry can then be prosecuted, and that unlawful removal is sufficient to meet the element. You know, our cases seem to say that if an alien is removed without being afforded his full rights during the immigration proceedings, then that's a violation of due process. And so he can challenge the prior deportation if he's criminally prosecuted, right, for illegal reentry. If this is that kind of case, then he also has to show prejudice. In other words, that he had at least a plausible case if he had pursued his appellate remedy. Now, is that the kind of case you're arguing, or are you arguing something else, that it affects he was not removed at all because the removal was illegal? I'm arguing that, in effect, he was not removed at all. This is not a challenge to the way the order was granted, but rather a challenge to the fact that the order had no authority. And what case do you rely on to say this is not a removal at all? I'm relying on Singh v. Waters and United States and Mendez, excuse me. They're Ninth Circuit immigration cases. This Court hasn't addressed this issue in the terms of an actual definition of the word deportation. There's really no case right on point, is there? No. You can't point to a case and say this case is in all fours and say this is not a removal. The closest we can get to that is the Southern District, the case of the Southern District of New York, which clearly is not binding on this Court. But in that case, the Court addressed the exact same issue and agreed that a lawful authority and a physical removal must occur at the same time to be a deportation and that a stay of an order renders it without any legal authority whatsoever. It's your position that your client was never removed or deported at all then? It's my position that what happened to him cannot constitute the legal definition of a deportation. It cannot meet the element of the statute. So, yes. He was hustled out of the country before he had a right to exercise his appeal. Right. He was hustled out or taken out of the country and, in fact, kidnapped by immigration. They had no authority to remove him at that point. He wasn't kidnapped. He wasn't held for ransom. Let's not get histrionic. I don't intend to get histrionic. But they did remove him prior to vesting of any lawful authority. So even in good faith, it would be the same as saying that if an immigration officer arrests an individual on the street and physically escorts them out. No, but he had a hearing. He was found removable. What he didn't get was the right of appeal. Let's stick to the facts. You're not helping your argument by being, as I said, histrionic. Okay. Sticking to the facts of Mr. Medina's specific case, it's not just the denial of his right to appeal that's problematic. What's the prejudice to Mr. Medina Ibarra by his failure to exercise his right of appeal? He has to show prejudice under Pro Tovar, right? Assuming that this is a collateral attack on the due process rights of the deportation rather than a statutory construction argument, which is what Mr. Medina is making. Are you saying that the lack of appeal is a structural error? No. Well, I wouldn't concede that it's not. I mean, did he have any defense to the earlier removal? Was he not here as an illegal alien? He was actually a legal permanent resident at the time that he was physically – that he went through the deportation hearing. Mr. Medina Ibarra concedes that he didn't have – that an appeal wouldn't necessarily have garnered him the ability to stay in the United States. But that's only relevant if this is a 1326D collateral attack on his deportation. Mr. Medina is saying that the statute itself, deportation or removal, isn't just the physical taking out. It's the physical taking out pursuant to a lawful authority, and that both of those elements must be met to prosecute and convict somebody for illegal reentry after deportation. That a removal just absent any lawful authority isn't a deportation. And your authority for that is the district court in New York. As well as what this court has said in the immigration appellate context in Singh v. Waters and Mendez. In those cases, this court found that a removal, a physical removal, without authority because the orders were stayed, would put the alien back in the exact position he would have been but for the fact that he'd been removed. This court refused to consider that the alien had departed at all when he was removed by immigration without authority. Looking at whether that removal would divest this court of jurisdiction. This Court hasn't addressed the issue in the terms of 1326, presumably because this doesn't happen all that often. Well, you know, but the other cases that we've addressed, I guess the due process of the cases Judge Bayer referred to, I think a moral incline is one of them. But, you know, we have a whole series where there was some defect in the removal proceeding. In other words, you know, either he wasn't informed of the right to appeal or the alien was told, well, you know, no use appealing because you don't have a chance. A lot of things went wrong during the removal proceeding. And we've held, at least in the face of those defects, that, well, the alien also has to show that there was some prejudice, that if he would have been allowed to pursue his remedies, that there was at least a plausible claim that he could have pursued. Now, so I'm still trying to understand how your case differs from those cases in that you shouldn't have to show that your client was prejudiced. In all of those cases, when the individual was physically removed, the order was valid and enforceable. It was facially valid. Later. Oh, no. For instance, I can't remember the case, but maybe it was moral incline, but one of the aliens was not told that, well, you have a right to appeal. That's pro etobar, right? You weren't even told that. And I agree. So that's a defect. He didn't have the opportunity to appeal. How is that different from your case? In those cases, when immigration, the immigration service removed him, the judge may not have given the individual process, but the order was enforceable at that time. No, it's not enforceable because he was denied his right to appeal. It wasn't stayed. The order was in effect at the time immigration removed that individual. Your order wasn't stayed either. My order was stayed. By statute, once an individual, by CFR, excuse me, CFR 1003.6, automatically stays the removal for 30 days to give an individual the opportunity to appeal unless that appeal is waived. Unless he waives that. Right. Which he didn't in this case. It depends. He kept it. It depends on how you conclude the statement that he signed, where he said, I have no appeal pending, right? Which happened on the same day that he saw the immigration judge with no opportunity to file it. He was clear on the record, the oral record, that he was keeping that right to appeal. But he did sign the statement saying, I have no appeal pending, right? Because he hadn't been given the opportunity to have one pending. So the question is, you know, is that can that fairly be construed as a waiver of the right to appeal? I don't think so. Not when given the information on the record. I assume that's your position. Thank you. Thank you very much. Good morning, Your Honors. I'm Christopher McFadden on behalf of the United States. At the outset, I'd just like to thank you for giving me the chance to file that supplemental brief when this case was reassigned to me. There were some issues I felt we needed to flesh out, and I appreciate you giving me the chance to do that. The position of the government in this case is that this case is no different from cases like Proetovar or cases like Mendoza-Lopez. We believe that the government is able to rely on the defendant's removal from June 30th of 2004 in his subsequent criminal prosecution. The reason being that even if he did suffer a violation of procedural due process, and I admit, if he was deported in violation of a temporary stay, that is a violation of due process. The question then becomes, did he suffer any prejudice? No, that's not the argument she's making, though. Never mind whether that's a violation of due process or not. Her argument is that, well, you failed to prove an element of the offense, namely that he was removed, right? That's the argument. Okay. Here's, under any reasonable definition of the word removed, this defendant was removed. He went in front of an immigration judge. I don't think removed means legally removed. I think that it, here's what I think removed means. In other words, if we want to get histrionic, you think if the defendant were kidnapped and taken out of the country, that would constitute a removal? No, sir. It was done by the Attorney General, as he's done in the past. I'm going to give you the definition of what I believe removal is, and I believe this is backed up by case law and also by the statutory definition. A removal is a removal if someone has the opportunity to go in front of an immigration judge and an order is issued by that immigration judge, and then that person is removed under color of state law. The reason that it's key for the person to go in front of an immigration judge is because, number one, that ends the slippery slope type arguments we're hearing. But more importantly than that, the Supreme Court has repeatedly said that, at minimum, the due process clause means that you have a right to a fair hearing in front of a fair tribunal. That's from Graham v. Bracey, 520 U.S., at page 904. So your position is that if he had a fair hearing, that's sufficient to meet the legal requirements that he be removed, that he had been removed if he had some kind of a hearing pursuant to statute? I believe that if he has a fair hearing and then he is removed by immigration officials, he has been removed. He has been removed in violation of due process. And then we need to look at Mendoza-Lopez. What Mendoza-Lopez says is that when Congress enacted Section 1326, they didn't intend for litigants ever to be able to challenge the validity of a deportation. If you're removed in violation of a stay, then you've been removed in violation of due process. What the Supreme Court said is that Congress never intended for you to have any challenge at all. But then they said, and this was then codified and enacted in Section 1326d by Congress in 1996, if you've been – if you want to challenge your deportation, you need to show those three prongs, and one of them is prejudice. And in this case, he didn't show any prejudice. So this is in 1326 what? 1326d and also the Mendoza-Lopez opinion, Your Honor. A deportation, when there is an invalid order, is still a deportation and a removal. It's a removal in violation of procedural due process. And you need to then ask, was there any prejudice? And that's where I think the district judge got it wrong in the Southern District of New York. I understand that the district court is entitled to her opinion. But, again, it's not binding on this Court, and that case was never repealed. I think the – He had been convicted of a serious and aggravated crime. That's correct, Your Honor. Beating up on his wife, and he spent three years in prison. That's correct. And so if he had filed an appeal, even if he had got the best immigration attorney in the country and even if he had filed an appeal, which he didn't do, that appeal would have been denied. It would have been denied because he was absolutely forbidden from getting any relief. He was absolutely forbidden because he was an aggravated felon. That aggravated felony, as you pointed out, Judge Bea, comes from two instances in 2002 where he handcuffed, kidnapped, raped, and or beat to a pulp his wife, his wife's sister, and or his son. So even if he had filed an appeal, it wouldn't – it would have been denied. He would have been removed immediately. He said this removal was illegal and he could not file an appeal because he was in another country. Is that correct? I think that was the argument made in the briefs, Your Honor. Well, is that true? I mean, is that – if he has been removed, can he not pursue his appeal? There is a CFR that says that once you are removed from the country that you've abandoned your right to appeal. So let me just address that, though, in the context of the cases that were cited by the defense attorney, Singh v. Waters and Mendez v. INS. In both of those cases, what this Court said was that if you are removed at a time when you have – excuse me if I could just have one second. What those cases hold is that an appeal is filed from the immigration courts to the Federal Court, that the Federal Courts are not stripped of the right to judicial review if that person has departed the United States as a result of an involuntary deportation, a violation of a stay or of some other regulation. In other words, what those cases are getting at is they're saying that Homeland Security can't deport someone in violation of the law and then say that because he's gone, he has abandoned his appeal and the court no longer has jurisdiction. Those courts don't cover the issue in this – those court cases don't cover the issue in this case. The issue in this case is completely different. It's whether – if there is a deportation in violation of due process, if that deportation can still be used in a 1326 prosecution. And that then gets to Pro Atovar, Leon Leon, and the Supreme Court's decision in Mendoza Lopez, all of which say that if there's a due process violation, again, you have to establish prejudice. And it is well established that Congress can take a certain event and Congress can make that event an element of a crime, even if there are constitutional problems with that event. Let me just give you an example. In Mendoza Lopez, the Supreme Court relied heavily on Lewis v. United States. Lewis v. United States dealt with the felon in possession laws. If you're going to be charged as a felon in possession, you need to have had a prior felony conviction. The issue in Lewis was, does it have to be a valid conviction? The defendant in Lewis, his conviction was obtained in violation of the Sixth Amendment rights to counsel. What the Supreme Court said is that Congress didn't talk about a valid conviction. It only talked about a conviction. And since the defendant in Lewis had a chance to collaterally attack that conviction in state court, but he didn't do it, that conviction was still on the books and it was proper to rely on that conviction in order to satisfy the element of being a felon for purposes of the felon in possession law. The same logic ---- In that situation, the felon had had an opportunity to collaterally attack. Did Mr. Medina Barra? His collateral attack came in front of the district court in this case, where he raised the issues of failure to exhaust, lack of administrative remedies, and also negligence. As Mendoza Lopez attempted to do and was not allowed to do. Correct. Correct. That was the difference between 1326 at the time that the Supreme Court ruled in Mendoza Lopez and the factual setting in Lewis. In Lewis, he had the opportunity to collaterally attack. At the time that Mendoza Lopez was written by the Supreme Court, you didn't have the right to collateral attack. The Supreme Court created that right. They said if you're going to rely on a deportation, you have to at minimum afford the alien the right to collaterally attack that. And the alien in this case exercised his collateral attack rights and he suffered no prejudice as the Court has repeatedly pointed out. This case is which case? In this case, Medina Barra's case. Oh. He did have a collateral attack in front of the district court. And the district court found that there was no prejudice because, again, no plausible grounds for relief and he was an aggravated felon. One issue that we haven't really touched on too much is, and this can perhaps dispose of the case without even getting to the other issues, is whether the defendant waived his rights to appeal. I admit there's conflicting evidence in the record, but there was a factual finding by the district judge that the defendant did indeed waive his rights. You have the order by the immigration judge in which the judge circled the box waived. Now, I acknowledge that on that order it says that if there's a discrepancy between the printed order and what's on the oral tape, that what's on the oral tape should control. So to the extent there's a conflict there, it goes in favor of the defendant. But apart from that, there was the form that he signed where he said he had no pending appeal. And then even apart from that. That was true. He had no pending appeal. He had no pending appeal, but the reason was he hadn't been given an opportunity to file a pending appeal. That's one possible interpretation. That's not the interpretation the district judge gave. Is that the interpretation we have to give it in favor of the criminal defendant? It's the burden on the government to show that there's been a waiver. If it's at all ambiguous? I don't think it can. What I think is, given the record as it is, I don't know if you can say that the district judge's factual finding was clearly erroneous. And I think that's the standard of review when we look at factual findings by district courts. What's factual finding? You mean as to what that phrase on the written order means? Correct. From looking at that and then also from looking at the evidence, other evidence, which would include the fact that if the defendant felt that he had an appeal, it's true, he never filed one. There's no – there was no declaration ever submitted into the record by the defendant as part of this case saying that he had intended to file an appeal. And I think when you consider all of that in the totality, I think that it's possible to affirm the district court's finding on that basis alone and thus dispose of the other issues in this appeal. Let me ask another question. You know, this is the first time I've really looked at 1326D as in Dogg, which you pointed out in your argument. Yes, sir. Which is a newly added subsection on the limitation on collateral attack. Yes, sir. D has no requirement that AILM make a showing of prejudice, does it? Does that mean it intended to do away with the cases that say the AILM has to show prejudice? The third prong in 1320 – the answer is no, Your Honor. The third prong of 1326D is that the entry of the order was fundamentally unfair. Fundamental unfairness equals prejudice. That's what the case law said long before this was enacted, and it's presumed that the Court and Congress knows what the case law is saying when it enacts legislation. So fundamental unfairness is prejudice. So you think that means fundamental – fundamentally unfair means you have to show prejudice? I do, Your Honor. Is there any case law on this that construes subsection D? I think that – this Court decided leon leon. It's an F-third opinion, so I assume that that came after 1996. But does it discuss subsection D? I don't know if it specifically discusses subsection D. I don't remember ever, you know, looking at this subsection before I ask. But you think that might be in that case. Well, I'll take a look at it. I'm almost certainly – I'm almost certain that that's so, Judge. I just don't have the case right in front of me, so I don't want to say unless I'm 100 percent sure. No, that's fine. But I'm almost certain. I appreciate that. Thank you. Thank you, sir. The bottom line in this case, again, whether we call it a question of statutory construction or whether we call it a collateral attack, the bottom line is that this is a collateral attack. He is trying to argue that he was not deported for purposes of a prosecution. He's bringing this claim in something other than a direct appeal. That, by definition, is a collateral attack. He suffered no prejudice in this case. I admit that there was a technical violation of his rights, but this is not part and parcel of a deliberate attempt by immigration to flout his rights, nor is it part of a larger systemic problem within INS. This Court has previously said that it is not going to get rid of the prejudice  What do you mean? I want to say it's not a deliberate attempt by INS. I don't know. Do you know whether it's routine that, you know, people like this are deported right on the spot even though they say they don't give up their rights to appeal? What I know, I know defense counsel said this rarely happens. I believe it rarely happens. My bet is that what happened in this case is — If we have anything in the record as to its frequency, then why are we arguing? No, there's nothing in the record on that, Your Honor. In other words, you know, you made the statement, well, this was not a deliberate act by the, well, INS anymore, but whoever it is. But maybe it was. We can't tell, can we? Well, I know that the judge's order itself circled the box waived. And if we want to talk about good-faith reliance on a judge's order, which is something we use in the Fourth Amendment context, I submit that the immigration officials acted in good faith by relying on a box where it was circled that he waived his rights to appeal in this case. I'm running short on time. This Court has repeatedly said that it's not going to eliminate the prejudice requirements in order to create a prophylactic rule designed to encourage immigration officials to do a better job. The requirement of prejudice is sufficient to protect an alien's due process rights. I submit there was no error in this case. I ask that the judgment of the district court be affirmed. Thank you. Kennedy. You used all your time, but we'll give you two minutes anyway. Thank you. Now, tell us again why we are not bound by the holding in Pro Atovar. Pro Atovar deals with the due process collateral attack to the proceedings, the deportation proceedings. Mr. Medina's argument is one of what the definition of the word deportation or removal is. I know that that's how you frame it as an abstract question. But the question is, in Pro Atovar, the issue was whether Pro Atovar had the right to appeal taken away from him. The Court said even if that happened, he had to show prejudice. Your factual situation, no matter how you define it abstractly or characterize it for purposes of argument, is that Medina Ibarra did not have a right of appeal. Right? So the factual situation is the same. Now, tell me why Pro Atovar does not apply. Because at the time Pro Atovar was removed, the immigration officials that removed him were in full legal authority to do it. Granted, it was found later that that order was impermissibly done because Pro Atovar wasn't told about his right to appeal, but that's very different than an order that is stayed by INS regulation. Stayed, by definition, means not enforceable. There was nothing no enforceable order in effect at the time that Mr. Medina Ibarra was removed. When Mr. Pro Atovar was removed, the order was enforceable and valid on its face. And that is what makes this case different. What made the order enforceable in Pro Atovar was that the right of appeal had not been advised to Pro Atovar, but nonetheless the order was there. The difference here is the right of appeal was automatic and had not, and you claim has not been waived. Right? And was not waived. On the record, Mr. Medina said he wanted to keep the right to appeal. CFR 1003.6 at that point stays his removal and says the INS shall not remove him until either 1, he waives it, or 2, the period of time for filing of the appeal, which in this case is 30 days, expires.  Thank you. The matter just argued will be marked submitted. And we will go to the next case, which is United States of America v. Tyree Thompson. Thank you.
judges: Siler , Tashima, Bea